## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TODD DISNER and | ) | |
| DWIGHT OWEN SCHWEITZER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1302 (RMC) |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

Pro se Plaintiffs Todd Disner and Dwight Owen Schweitzer were victims of an internet Ponzi scheme called AdSurfDaily, Inc. (ASD).   Federal agents investigated ASD for wire fraud and money laundering and, pursuant to warrants, federal agents seized approximately $80 million of ASD's funds and related assets.   The Government obtained *in rem* forfeiture judgments against the funds and other property purchased with ASD monies.   Plaintiffs allege that the warrants and the seizure of the funds were invalid and seek a declaratory judgment that their Fourth Amendment rights were violated.   The Government moves to dismiss.   Because Plaintiffs lack standing to raise a Fourth Amendment claim, the motion to dismiss will be granted.

## I.   FACTS

ASD was founded and controlled by Thomas Anderson ("Andy") Bowdoin.   In connection with his operation of ASD, on November 23, 2010, Mr. Bowdoin was indicted and charged with five counts of wire and two counts of securities fraud.   *See United States v. Bowdoin*, 10-cr-320 (D.D.C.), Indictment [Dkt. 3].   He pleaded guilty to one count of wire fraud

on May 18, 2012.   *Id*., Plea Agreement [Dkt. 49].   He admitted that ASD operated as a "Ponzi"

scheme, that he "was aware that ASD was an illegal money making business, and that he was

intentionally defrauding ASD members."   *Id*., Statement of Offense [Dkt. 50] at 1-2.   On August

29, 2012, Mr. Bowdoin was sentenced to a prison term of seventy-eight months plus three years of

supervised release.

On August 5 and December 19, 2008, federal

agents obtained warrants and seized approximately $80 million from ASD's bank accounts as well

as other property.   The Government filed three different complaints for forfeiture *in rem* against

the funds, together with real and personal property purchased with ASD monies.   *See United*

*States v. 8 Gilcrease Lane*, 08-cv-1345 (D.D.C.), Compl. [Dkt. 1]; *United States v. 2 North Adams*,

08-cv-2205 (D.D.C.), Compl. [Dkt. 1]; *United States v. Funds Totaling $496,505.34*, 10-cv-2147

(D.D.C.), Compl. [Dkt. 1].

Plaintiff Todd Disner filed a form motion to intervene in the *8 Gilcrease Lane*

forfeiture action, claiming he was owed $53,000.   *8 Gilcrease Lane*, 08-cv-1345, Mot. to

Intervene [Dkt. 91].   The Court denied the motion, along with similar motions filed by others,

finding that Mr. Disner failed to establish that he had an interest in the property at issue.   *See id*.,

Order [Dkt. 96] (denying motion for the reasons stated in Op. [Dkt. 72]).   The Court explained:

> Congress has required a would-be interven[or] [in a forfeiture
> action] to establish, by filing a timely verified claim to some or all of
> the defendant property, that the claimant has an interest in some
> portion of, or all of, the particular defendant property.   *See* Supp. R.
> Adm. or Mar. Cl. & Asset Forfeiture Actions G(5)[1]; 18 U.S.C. §

---

[1]   "A person who asserts an interest in the defendant property may contest the forfeiture by filing a
claim in the court where the action is pending.   The claim must: (A) identify the specific property
claimed; (B) . . . state the claimant's interest in the property; [and] (C) be signed by the claimant
under penalty of perjury[.]"

983(a)(4)(A).   Compliance with these requirements gives rise to "statutory standing."   *See United States v. Property Identified as $88,260.00 in United States Currency*, 925 F. Supp. 838, 841 (D.D.C. 1996) ("A verified claim in a forefeiture action *in rem* must be filed by the claimant in order for the claimant to acquire 'statutory standing.'"); *United States v. One 1990 Mercedes Benz 300CE*, 926 F. Supp. 1, 3 (D.D.C. 1996).

. . .   [C]laimants have failed to demonstrate that they have a cognizable interest in the monies to be forfeited.   Fraud victims who voluntarily transfer their property to their wrongdoers do not retain a legal interest in their property; instead, such victims acquire a debt against their wrongdoers.   *See United States v. Agnello*, 344 F. Supp. 2d 360, 372 (E.D.N.Y. 2003) (finding that standing in a civil forfeiture action requires a showing of an ownership interest in the forfeited property, not merely a right to payment); *United States v. $3,000 in Cash*, 906 F. Supp. 1061, 1065 (E.D. Va. 1995) (claimant/victim could trace his money to seized bank account but title to the money passed to perpetrator, making claimant an unsecured creditor without standing).   The generalized legal interest movants may have in the assets of ASD does not equate to the necessary particularized interest in any specific asset of ASD required for standing.   *See* 18 U.S.C. § 983(d)(6)(B)(I) ("the term 'owner' does not include (i) a person with only a general unsecured interest in, or claim against, the property or estate of another . . . ."). To the extent they have not satisfied these basic requirements — that is, timeliness and a showing of interest in the defendant property — movants lack statutory standing to submit any claim here.

The proposed intervenors also need constitutional standing to proceed; that is, there must be a live case or controversy between the parties.   *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).   "The term 'statutory standing' relates to a claimant's ability to show that he has satisfied whatever statutory requirements Congress has imposed for contesting a civil forfeiture action in federal court, while 'Article III standing' [or 'constitutional standing'] relates to the claimant's ability to show that he has a sufficient interest in the property to satisfy the case-or-controversy requirement of Article III of the Constitution."   Cassella, Stefan D., *Asset Forfeiture in the United States: A Treatise on Forfeiture Law*, § 0-4 at 22-23 (2006).   In other words, in a civil forfeiture case, a claimant's constitutional standing "turns upon whether the claimant has a sufficient interest in the property to create a case or

controversy."  *United States v. Real Property Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004).   A claimant also must demonstrate an injury by establishing either an ownership or lesser possessory interest in the property.   *United States v. $114,031.00 in U.S. Currency*, 284 Fed. Appx. 754, 756 (11th Cir. 2008) (unpublished).   Showing a real or imminent injury is essential to establish constitutional standing.   *United States v. Cambio Exacto, S.A.*, 66 F.3d 522, 527 (2nd Cir. 1999).

 . . . [M]ovants lack constitutional standing because they have no interest sufficient to create a claim or controversy and, thus, they cannot intervene in this matter as of right.   Similarly, they have not demonstrated that they have a claim or defense available to them such that the Court should allow permissive intervention pursuant to Rule 24(b).

*Id*. at 5-9 (footnote omitted).

The Government obtained judgments and orders of forfeiture against the properties seized.  *See 8 Gilcrease Lane*, 08-cv-1345, Order of Forfeiture [Dkt. 166, 179]; *2 North Adams*, 08-cv-2205, Order of Forfeiture [Dkt. 15, 22]; *see also Funds Totaling $496,505.34*, 10-cv-2147, Partial Order of Forfeiture [Dkt. 22].   Upon obtaining title to the forfeited property, the Government retained a private contractor, Rust Consulting, Inc., as the ASD Remission Administrator.   The Remission Administrator's job is to verify and distribute the proceeds of the forfeiture to those who completed and submitted verified claims to the funds.

Plaintiffs state that they cannot complete the forms necessary to support their claims because they need information seized by the Government.   Compl. [Dkt. 1], at 3.   They allege that federal agents seized money, uncashed checks, unendorsed checks, books, computers, and other assets and records created and maintained by Plaintiffs in the computers and servers that were in the custody and control of ASD.[2]   Plaintiffs maintain that their information was encrypted and password protected.   Specifically, Mr. Disner claims that he is owed $53,000.   *See 8*

---

[2] On September 17, 2008, the Government returned to ASD the computers that it had seized.

*Gilcrease Lane*, 08-cv-1345, Mot. to Intervene [Dkt. 91].   Mr. Schweitzer avers that he cannot remember where his checks/money orders were drawn, that he put $3,500 into ASD, and that he was involved with ASD for "only a few weeks before it was shut down."   *Id*., Ex. 4 (6/1/2011 email from Mr. Schweitzer to Rust Consulting).

As a result of these events, Plaintiffs brought this suit alleging that the warrants and the seizure of the funds was invalid, seeking a declaratory judgment that their Fourth Amendment rights were violated, and demanding return of the property that was seized.   The Government moves to dismiss for lack of jurisdiction because Plaintiffs lack standing.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject matter jurisdiction.   Fed. R. Civ. P. 12(b)(1).   When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged.   *Barr v. Clinton*, 370 F. 3d 1196, 1199 (D.C. Cir. 2004). Nevertheless, "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).   To determine whether it has jurisdiction over the claim, a court may consider materials outside the pleadings. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005).   No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is an Article III and a statutory requirement.   *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).   The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists.   *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).

### III.   ANALYSIS

One who asserts a Fourth Amendment violation bears the burden of demonstrating that his own Fourth Amendment rights, rather than those of someone else, were violated.   *Rakas v. Illinois*, 439 U.S. 128, 132 (1978).   Fourth Amendment rights are personal and may not be "vicariously asserted."   *Id.* at 133-34.   To prevail on a Fourth Amendment claim, a plaintiff first must show that there was a search and seizure of that individual's person, house, papers or effects, conducted by an agent of the government, *i.e.*, an invasion of the claimant's reasonable expectation of privacy.   *United States v. Segura-Baltazar*, 448 F.3d 1281, 1285-86 (11th Cir. 2006).   Second, the plaintiff must show that the challenged search and seizure must be "unreasonable," *i.e.*, not supported by a probable cause.   *Id.*

An officer or a sole shareholder of a corporation may have a privacy interest in corporate records if he can demonstrate that he had a legitimate and reasonable expectation of privacy in such records.   *See, e.g., Williams v. Kunze*, 806 F.2d 594, 599 (5th Cir. 1986) (status as officer and shareholder was insufficient on its own to demonstrate an expectation of privacy in corporate documents; plaintiffs lacked standing to challenge the search and seizure of such documents).   Further, one who gives business records to another does not retain a privacy interest in such records.   In *United States v. Miller*, 425 U.S. 435, 442-44 (1976), the Supreme Court found that a bank depositor had no Fourth Amendment interest in checks, deposit slips, financial records, and monthly statements that were obtained by the government via grand jury subpoenas served on a bank.   The documents were business records of the bank, not private papers.   *Miller*, 425 U.S. at 442-43.   The depositor lacked an expectation of privacy in the records as he had voluntarily conveyed them to the bank.   *Id.*   "[T]he Fourth Amendment does not prohibit the

obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Id*. at 443.   The same principle applies to information revealed to a third party via the Internet.   S*ee, e.g., United States v. Perrine*, 518 F.3d 1196, 1204 (10th Cir. 2008) ("Every federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment privacy expectation."); *Guest v. Leis*, 255 F.3d 325, 335–36 (6th Cir. 2001) ("Individuals generally lose a reasonable expectation of privacy in their information once they reveal it to third parties."); *U.S. v. Hambrick*, Civ. No. 99-4793, 2000 WL 1062039, at *4 (4th Cir. Aug. 3, 2000) (a person does not have a privacy interest in the account information given to the ISP in order to establish an email account).

Moreover, a fraud victim who voluntarily transfers property to a wrongdoer does not retain a legal interest in the property; instead, the victim becomes a creditor of the wrongdoer. *See United States v. Agnello*, 344 F. Supp. 2d 360, 372 (E.D.N.Y. 2004) (finding that standing in a civil forfeiture action requires a showing of an ownership interest in the forfeited property, not merely a right to payment); *United States v. $3,000 in Cash*, 906 F. Supp. 1061, 1065-66 (E.D. Va. 1995) (claimant/victim could trace his money to seized bank account but title to the money passed to perpetrator, making claimant an unsecured creditor without standing).

Plaintiffs insist that ASD held property that belonged to them, but they have not alleged any facts to support this claim.   Plaintiffs were not officers, shareholders, or employees of ASD, and there is no showing that ASD held their property at its offices.   Plaintiffs were victims of fraud who voluntarily transferred funds to ASD.   When they transferred monies to ASD, they did not retain ownership.   Plaintiffs are unsecured creditors of ASD who may claim a portion of

the forfeited funds, but they do not have standing to challenge the search and seizure of ASD property.   Furthermore, despite Plaintiffs' claim that the records on the ASD servers were encrypted and password protected, Plaintiffs had no privacy interest in the ASD records.   The records were voluntarily transferred to ASD and were in the custody and control of ASD. Plaintiffs have no privacy interest in records shared with a third party.   Without a reasonable expectation of privacy, Plaintiffs cannot make out a Fourth Amendment claim.

## IV.   CONCLUSION

For the reasons stated above, Defendant's motion to dismiss [Dkt. 37] will be granted and the case will be dismissed.


Date:   August 29, 2012                    _____/s/_____
                                           ROSEMARY M. COLLYER
                                           United States District Judge